## Superior Coal Company, et al. v. Runyon, et al.

### (Decided May 13, 1919.)

### Appeal from Pike Circuit Court.

1. Contracts—Terms of Written Contract May be Varied.—The terms of a written contract may be varied by verbal agreement of all parties.
2. Contracts—Quantum Meruit.—A provision in a contract that the consideration was not to be paid until the whole contract was completed and the lumber sold and paid for, did not prevent the contractor from recovering on the quantum meruit where the contractee wrongfully entered and took control of the work and ousted the contractor.
3. Appeal and Error—Finding of Chancellor.—The finding of fact by a chancellor will not be disturbed unless against the weight of the evidence.

E. J. PICKELSIMER and ROSCOE VANOVER for appellants.

CHILDERS & CHILDERS and CLINE & STEELE for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This action was instituted by Runyon and Epling in the Pike circuit court against the Superior Coal Company and W. T. Brooks, its general manager, to recover $1,650.00 for manufacturing lumber, and $137.50 for logs cut and skidded, under a contract entered into between the parties April 18, 1916, whereby Runyon and Epling undertook to manufacture a certain boundary of timber belonging to the company into lumber at the price of $11.00 per thousand feet,

board measure. By the terms of the contract Runyon and Epling were to begin work within 10 days from date thereof, and to complete the job within 90 days, and to receive pay for manufacturing said lumber "when the lumber is sold and paid for." The work was not actually begun for more than 70 days after the making of the contract for the reason that there was no suitable mill site on the land on which the timber grew, and a site had to be obtained from neighboring landowners, and as these negotiations were drawn out, the commencement of the work was delayed. It is the contention of the appellees, Runyon and Epling, that it was the duty of the Superior Coal Company to provide a mill site upon which to set the mill for the manufacture of the lumber; that, while the contract does not refer to this, by custom in that neighborhood the timber owner who contracts for the manufacture of lumber from standing timber is to provide a suitable mill site. The contract was first made between Runyon on the one part, and the Superior Coal Company and W. T. Brooks on the other. Later on, however, and some time after the expiration of the 10 days in which the work was to begin, Runyon arranged with Epling to help carry on the work and took him in as partner, with the consent and approval of Brooks as the agent and representative of the Superior Coal Company, and Brooks, who had drafted the original contract between the Superior Coal Company and Runyon, interlined the name of Epling into the original contract as a party thereto, and Epling subscribed his name to it. When this was done, the question of additional time for the completion of the contract was discussed, according to the evidence of appellees, and Brooks for the Superior Coal Company, agreed to extend the time beyond the 90 days mentioned in the original contract for the completion of the work, saying that he needed 10,000 or 12,000 feet of lumber and that if appellees would supply him with that amount immediately, and then such lumber as he needed from time to time in the construction of his tipple and mining plant, which he was then building, it would be satisfactory. The sawing was commenced on July 3rd, and within a few days thereafter appellees delivered to appellant several thousand feet of lumber such as he desired, which he employed in his construction work, and within the next thirty days there was something more than 100,000 feet of lumber manufac-

tured and stacked on the yard, as per the contract. In addition to this a great deal of timber had been cut into logs in the woods and some of it had been skidded and placed on the mill yard, but not sawed. About this time Brooks, for the Superior Coal Company, began to complain that the work was not rushed along faster, and finally took charge of the job himself and ousted appellees. Thereafter Brooks had charge of the work entirely until the whole boundary of timber was worked up, amounting to approximately 222,000 feet of lumber, board measure. While appellees were to receive $11.00 per thousand feet for the lumber when manufactured and placed on sticks in the yard, they had sublet the work to other persons, one to do the cutting of the timber, another the logging, and still another the sawing and stacking, at such prices as that there was a margin profit of $2.75 per thousand feet to appellees. Appellees expended in carrying on the job up to August 3rd, when Brooks assumed control, approximately $1,250.00, and had received nothing whatever from the Superior Coal Company or Brooks on the contract although the company had sold and removed 7,000 feet of lumber and had used approximately 14,000 feet in their own business. About twenty days after appellees were ousted from the job by Brooks, as superintendent and manager of the Superior Coal Company, they brought this action to recover on their contract. As an incident to the suit appellees sued out an order of attachment and had it levied upon the lumber manufactured, the grounds therefor being the non-residency of the appellant corporation.

The defendant answered, denying the allegations of the petition, except it admitted the execution of the contract and a partial performance thereof, but pleaded a counterclaim and set-off in which it alleged that at the time of the making of the contract for the manufacture of the lumber, it was preparing to enter into the coal mining business at Elkhorn City, and that in order to have lumber with which to erect its tipple and mining camp on which it desired to rush the work, it entered into this contract with Runyon and Epling limiting the time in which to begin the manufacture of the lumber and completion of it in order to expedite their work of building and equipping their coal mining camp; that the work of constructing the mining camp depended upon the rapidity with which the lumber was furnished and that the failure of

appellees to perform their contract according to its terms and provide the lumber with which to build the tipple and mining camp of appellant, resulted in great loss and damage to appellant in that it was delayed in starting the operation of its mines and the production of coal, which was at the time in great demand and selling at high prices, and that as a result thereof appellant was damaged in the sum of $3,000.00, for which it prayed judgment against appellees. An amended petition was later filed in which appellees averred that Brooks, as general manager and vice president of the Superior Coal Company, had willfully and for the purpose of delaying and defrauding appellees, omitted to sign the name of the company to the contract, although its name was in the body thereof, and signed the contract in person only. The appellants having filed a motion to discharge the attachment sued out by appellees, the court heard and considered same and overruled the motion and the attachment was continued in force.

Each party acknowledged the execution of the original written contract, but appellees Runyon and Epling insisted that at the time Epling's name was placed in the contract by Brooks, the terms of the contract were modified to the extent of giving additional time in which to complete the manufacture of the lumber, and the failure of appellee Runyon to commence the work within 10 days was waived. This is denied both by the pleading and the evidence of the Superior Coal Company and Brooks. Quite a volume of evidence was introduced upon the few controverted points, and the case being submitted to the court for judgment, it was decreed that Runyon and Epling recover of the defendant Superior Coal Company the sum of $1,269.40 for lumber actually manufactured at the contract price of $11.00 per thousand feet; and the further sum of $300.00 for work done in cutting, snaking and skidding timber which was not manufactured into lumber, but which was partly or wholly prepared for that purpose. The attachment was also sustained. From this judgment Superior Coal Company appeals.

It is the contention of appellant that the petition did not allege a cause of action in that it did not aver the contract had been fully completed but that it only averred that appellants had sold 7,000 feet of lumber and had converted to their own use 14,000 feet of lumber,

whereas, the contract specifically provides that appellees were to be paid for the manufacture of the lumber when the lumber is sold and paid for, and that the petition did not contain any averments that the lumber had been sold by the company and paid for. It is true that the written contract contains the condition as to payment set forth, but this must be construed in the light of the whole contract and the surrounding circumstances. Brooks drafted the contract. The acceptance and appropriation of the lumber by the coal company amounted to a sale thereof, and as most of the lumber was to be used in the erection of the tipples and mining plant by the company it must have been in the contemplation of the parties at the time of the making of the contract that the lumber should be paid for as so used. At any rate, when Brooks, for the company, ousted appellees from the job and assumed control himself, appellees were entitled to immediate compensation for that part of the lumber manufactured and logs prepared, unless they had first breached the contract. The trial court found the facts in favor of appellees, and that appellant company through its agent had consented to the extension of the time provided in the contract for the manufacture of the lumber, and it also waived the breach of the contract, if any there was, on the part of Runyon in failing to begin the work within 10 days from the date of the writing. The evidence abundantly shows that after the work was commenced, immediately after the granting of the extension, it was prosecuted with diligence and success and a great amount of lumber was manufactured in a very short time. No reasonable complaint could have been made of the progress of the work.

The trial court rejected the counterclaim of appellant, and rightfully so we think, because the weight of the evidence is to the effect that the delay in commencing the work was due to the failure of appellant to provide a mill site, and the time in which to complete the work was extended. The judgment of the chancellor is sustained by the weight of the evidence, and there being no error of law cited by appellant, the judgment is affirmed.