ALFRED M. HESTON ET AL., PROSECUTORS, v. CITY OF
ATLANTIC CITY ET AL., RESPONDENTS.

Argued February 18, 1919—Decided August 6, 1919.

1. The requirements of the statute of 1911 (*Pamph. L., p.* 471),
   providing that a full and complete examination of the books and
   accounts of the city shall be made by competent accountants and
   the result published, are mandatory and imperative in character,
   and the absence of a specific appropriation for that purpose can-
   not operate to defeat its execution.

2. The work of examining and auditing the books of a city, in pur-
   suance of the requirements of *Pamph. L.* 1911, *p.* 471, is not
   work or the furnishing of material or labor which must be
   awarded to the lowest responsible bidder, after public adver-
   tisement under the provisions of *Pamph. L.* 1912, *ch.* 342.

On writ of *certiorari* removing resolution.

Before Justices PARKER and MINTURN.

For the prosecutors, *Clarence L. Cole.*

For the respondents, *Harry B. Wootton* and *Joseph B.
Perskie.*

The opinion of the court was delivered by

MINTURN, J.   The commissioners of Atlantic City, on July
18th, 1918, adopted a resolution selecting as auditors of the
books of that city for the year beginning September 1st, 1917,
Edward P. Moxey & Company at a compensation of $1,175,
payable at the completion of the audit.   The resolution was
adopted in pursuance of the requirement of the statute of
1911 (*Pamph. L., p.* 471), which required the board at the
end of each year to "cause a full and complete examination
of all the books and accounts of the city to be made by com-
petent accountants; and shall publish the result of this ex-
amination in the manner above provided for the publication
of monthly expenditures."   The prosecutor, an unsuccessful

candidate for the work, on the 18th of September, 1918, obtained a rule to show cause why a writ of *certiorari* should not issue to test the legality of the resolution upon two grounds—*first,* that there was no funds on hand and no appropriation from which payment for the service could be made; *secondly,* that the contract price was in excess of $500, and that bids were not advertised for in compliance with the requirement of the act of 1912. *Pamph. L., p. 593.* Omitting consideration of the objection of laches, which has been interposed (but which is not without merit in public transactions of this character, where the proceedings are public and the service contracted for the result of a legislative mandate, eliminating municipal discretion as to its necessity), we think that since there was on hand in the contingent fund sufficient moneys to pay the accountants at the completion of their services, that fund could be utilized in the absence of a specific appropriation for the purpose, in liquidating the contract indebtedness resulting from the passage of the resolution in question. A contingent fund in its inception was the method of setting aside income received during the fiscal year and not otherwise appropriated, and retaining it until specifically appropriated at the beginning of the next fiscal year. The act of 1917, chapter 192 (*Pamph. L., p.* 548), entitled "An act concerning municipal and county finances," while it gave the fund legislative recognition in municipal appropriations, operated simply to impose a limitation upon the *quantum* of the fund when utilized as a fiscal subdivision for municipal and county appropriations.

We are not concerned, however, in this controversy with the *modus operandi* by which the fund was replenished. It is enough to know that it existed and was sufficiently replete to meet the requirements of this contract when the compensation was payable. Nor is it necessary to determine that such a fund may be utilized for every obligation not otherwise provided for. Such a contention presents obvious difficulties, not the least of which is the barrier erected by the statute of 1876, hereinafter referred to. It is enough for the purposes of this

discussion to determine that since the legislative requirement of publication of the financial status of the city was mandatory and imperative in character, the absence of a specific appropriation could not operate to defeat its execution, otherwise a well-defined legislative policy presumably devised for the information of the citizen, as a basis for intelligent consideration, in the direction of municipal affairs could be effectually thwarted and subverted by studied inactivity, by a body possessing the peculiar threefold function of appropriating, legislating and disbursing under a legislative conception of concentrated responsibility.

It is also to be observed that the passage of the resolution required no immediate financial outlay, but that payment was to be "on the completion of such audit," which in fact happened after September 1st, 1918, at which time a specific appropriation for the purpose was in existence, and the necessity of resorting to the contingent fund was thereby obviated.

The cases of *Atlantic City Water Works* v. *Read,* 50 *N. J. L.* 665, and *State* v. *Halstead,* 41 *Id.* 552, relied upon by the prosecutor, may be differentiated by observing that in the case at bar the duty to audit and publish the result was mandatory, and that the local body was simply a legislative instrumentality in its execution, while in the cases cited the work undertaken by the municipal body in each instance was entirely of a discretionary character, and in nowise imperative as a delegated legislative duty; the one involved a plain duty and absolute compliance to enforce which *mandamus* would lie; the other involved only the untrammeled exercise of free will and discretion, in nowise enforceable as a public duty by judicial process. *Warmolts* v. *Keegan,* 69 *Id.* 186.

It is finally contended that the expenditure being in excess of $500 was prohibited by chapter 342, laws of 1912, unless awarded to the lowest responsible bidder, after public advertisement.

The act provides that a contract involving such an expenditure "for the doing of any work, or for the furnishing of any material or labor," unless so awarded, shall be invalid.

The contention thus resolves itself into the inquiry whether services of the character in question are comprehended by the legislative designation "work," "materials" and "labor."

In *Delker* v. *Freeholders,* 90 *N. J. L.* 473, the Chancellor, speaking for the Court of Errors and Appeals, held that under the act of 1909, page 92, official advertising in a newspaper was not comprehended in the legislative provision. requiring the furnishing of labor, work or materials to the county upon advertisement to the lowest bidder.

The learned Chancellor refers to *Shaw* v. *Trenton,* 49 *N. J. L.* 638, where the charter of Trenton required that all contracts for work or materials should be given to the lowest bidder, as a result of which the same court held that the supplying of rubber hose to the fire department was not an "improvement" within the legislative designation.

It is unnecessary, however, to invoke the reasoning of either case as *ratio decidendi* here, for, as we apprehend the services to be rendered under this resolution were of a character involving peculiar professional education and experience, which invariably have differentiated their possessor in the industrial, economic and social environment of life, from one possessed only of the capacity to furnish work and labor as those terms are commonly accepted. Such services are comparable in character with the special services of counsel, the employment of a physician, or like expert service in the discharge of municipal administrative requirements; and while, generically, all such persons are engaged in work and labor, the ordinary mind, untrammeled by the niceties of phraseology and etymology, would find it difficult, even in the present liberal segregations of economic life, to change the acquired meaning that custom and time have accorded these words.

In this light it was that the legislature in 1912 dealt with the subject; and we are primarily engaged in a search for the legislative intent as evinced by the language employed to indicate it. In such an inquiry we must assume that the legislature intended to employ language in its ordinary popular and usual acceptance. *Gibbons* v. *Ogden,* 8 *N. J. L.* 288;

*McLorinan* v. *Bridgewater Twp.*, 49 *Id.* 614; 1 *Kent Com.* 463.

In this connection the maxim of interpretation and construction, *nositur a sociis,* is not without its practical application.

Thus, we find in the act *sub judice* the words "the doing of any work," followed in the disjunctive by "the furnishing of any materials or labor." Such a connotation indicates the acceptance by the legislative mind of the economic, industrial and popular understanding and use of the words "work, materials and labor," as distinguished from the services rendered in a professional capacity by an expert accountant, who has neither work, labor nor materials, *eo nomine,* to sell in market overt. *Trapp* v. *Brown,* 91 *N. J. L.* 481; *Black Inter.* 135; 36 *Cyc.* 1118, and cases.

These reasons furnish the basis for our conclusion that the resolution in question must be affirmed, with costs.