NANA B. ROLLINS & others *vs.* CITY OF SALEM & others.

Essex.    December 10, 1924. — February 27, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, & WAIT, JJ.

*Municipal Corporations*, Officers and agents: mayor.

A mayor of Salem, a city which had adopted a Plan B form of charter under G. L. c. 43, who, upon taking office in 1924, found that bids had been received for the construction of a school house addition according to specifications furnished by an architect employed by the city, and that the lowest bid had been $249,850 while the entire appropriation made for the building was $150,000, was justified in considering the cost of the projected building a matter of such serious importance as to call for investigation to determine whether by a change of plans the cost could be materially reduced, and in employing a firm of consulting engineers of experience in designing school houses to determine whether it was feasible to build a satisfactory school house addition, fulfilling the requirements as previously reported, for $200,000 or less and to prepare and present preliminary plans showing what could be done for that amount; and such action by him was not a violation of G. L. c. 43, § 28, or of c. 15, § 3, of the ordinances of the city, and should not be enjoined in a suit by ten taxable inhabitants under G. L. c. 40, § 53.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Essex on February 11, 1924, against the city of Salem, its mayor, treasurer, auditor, and the members of a special committee of its city council appointed relating to the erection and equipment of an addition to the Phillips School, seeking to enjoin the making of a contract with McLaughlin and Burr and the breaking of an alleged existing contract with John H. Bickford Company.

The suit was referred to a master. Material facts found by the master are described in the opinion. No objections nor exceptions to the report were filed. The suit was heard by *Pierce*, J., by whose order there was entered a final decree dismissing the bill. The plaintiffs appealed.

*R. L. Sisk*, for the plaintiffs.

*W. A. Pew*, city solicitor, for the defendants.

BRALEY, J.    It appears from the allegations of the bill, the admissions in the answer of the defendants, the city of

Salem and George J. Bates the mayor, and the master's report, that on January 7, 1924, when the mayor and other municipal officers who are joined as defendants assumed office, the preceding administration after advertising for competitive bids, had entered into an alleged contract with the John H. Bickford Company, a corporation, to prepare and furnish preliminary plans and specifications for an addition to the "Phillips School," and, if the plans were accepted, to act during its construction as supervising architect. The preliminary and final plans having been approved, the city advertised for bids for the work of construction. The lowest bid was $253,673. It was not accepted, and new bids were called for, the lowest of which was $249,850. This bid also has not been accepted. But if taken as a basis for computation of the six per centum named in the architect's contract as compensation, the amount as stated by the master is $14,991, of which it has received $9,132.22, leaving $5,858.78 unpaid. The city council, however, had appropriated $150,000 for procuring additional land, and for the erection of the addition, including the fees of the architect, which had been raised by the issue of bonds, and the appropriation was to be expended under the direction of the mayor and a special committee of three members of the council.

The defendant Bates upon inauguration was thus confronted with the question of building the addition at a cost which would require further appropriations, and the master reports that, acting in good faith, and with sound discretion, and for the best interests of the taxpayers, and with knowledge of the city's financial condition, he considered the cost a matter of such serious importance as to call for an investigation to determine whether by a change of plans the cost could be materially reduced. It is found, that without calling for competitive bids, but with "the approval of the special committee and the school committee," the mayor "employed the firm of McLaughlin and Burr as consulting engineers" of experience in designing school houses "to determine whether . . . it was feasible to build a satisfactory school house addition fulfilling the requirements"

as previously described in the report, "for $200,000, or less, and to prepare and present preliminary plans showing what could be done for that amount." They were to receive $1,500 for their services to be paid from the appropriation of $150,000. It is not alleged that the amount is excessive, or that the appropriation upon the order of the mayor and special committee cannot be used in payment. The petitioners, who are more than ten taxable inhabitants of the city, asked that this expenditure be declared illegal and its payment enjoined. G. L. c. 40, § 53. The city having adopted for its charter " Plan B " as provided in G. L. c. 43, they contend that the contract is void under § 28, as well as by c. 15, § 3, of the ordinances of the city which read as follows, "No contract for construction work or for the purchase of apparatus, supplies or materials, whether for repairs or original construction, the estimated cost of which amounts to two hundred dollars or more, except in cases of special emergency involving the health or safety of the people or their property, shall be awarded unless proposals for the same have been invited by advertisements in at least one newspaper published in the city once a week for at least two consecutive weeks, the last publication to be at least one week before the time specified for the opening of said proposals. Such advertisements shall state the time and place where plans and specifications of proposed work or supplies may be had and the time and place for opening the proposals in answer to said advertisements and shall reserve to the city the right to reject any or all of such proposals. All such proposals shall be opened in public. No bill or contract shall be split or divided for the purpose of evading any provision of this chapter." "All advertisements for proposals for work shall be published in the manner and form required by the charter, and a copy of such advertisements shall be preserved by the officers or board causing such publications. Whenever advertisements for proposals for any work to be done for the city are made, the officer or board in charge of the work to be done, shall cause suitable plans and specifications to be prepared and shown to the parties proposing to bid. Every officer or

board authorized to contract for work in behalf of the city, shall advertise for proposals for the same, whenever the cost may reasonably be expected to exceed the sum of two hundred dollars, except in cases of special emergency involving the health or safety of the people or their property."

But by G. L. c. 43, § 48, "There shall be a mayor, elected by and from the qualified voters of the city, who shall be the chief executive officer of the city . . . ." The mayor's duties are primarily executive and administrative. He is the executive head of the municipality and has general supervision of all departments of the city government. See *Pedrick* v. *Bailey*, 12 Gray, 161; *Nichols* v. *Boston*, 98 Mass. 39. If in his judgment as the chief executive officer a proposed contract may be prejudicial to the city's interests, he is not bound to execute it without informing himself as to its scope and effect, and where a contract is in existence when he assumes office, it is still within his province to consider its terms and to ascertain the extent of the financial burdens imposed, and, if found on investigation to be oppressive or unnecessarily burdensome, to ameliorate or remove such conditions in so far as lawfully possible.

In view of the master's finding, that the mayor was justified in relying on the guaranty of McLaughlin and Burr that the school house could be built for $200,000, it cannot be held as matter of law, that it would not be prudent and advisable for the city to settle with the Bickford Company, and to go on under new plans and specifications whereby the enlargement could be undertaken and completed at much less expense than would be incurred if the original plans were followed. The employment of McLaughlin and Burr was not a contract for construction, but is an expenditure for information and advice from competent architects to enable the mayor to decide what action he ought to take in the discharge of his duties of administration.

We are therefore of opinion that the bill was dismissed rightly, and the entry must be,

*Decree affirmed.*