WILLIAM W. DRUMMEY, INC. *vs.* CITY OF CAMBRIDGE.

Suffolk.    January 11, 1933. — February 20, 1933.

Present: RUGG, C.J., PIERCE, WAIT, DONAHUE, & LUMMUS, JJ.

*School and School Committee. Municipal Corporations*, Officers and agents.

Action by the school committee of a city, without the approval of the mayor having first been procured, in orally engaging an expert to advise them in the matter of complying with an order of an inspector of the department of public safety that certain things be done in school buildings in their charge, and thereafter in further employing the expert orally for new compensation to prepare plans and specifications sufficient merely for the purposes of illustrating his recommendations and of obtaining estimates of expense, was not within the scope of, nor rendered invalid by, a provision of the city's charter that no "plans for the construction of or alterations in a school building shall be accepted, and no work shall be begun on the construction or alter-

ation of a school building, unless the approval of . . . the mayor is first obtained. This section shall not require such approval for the making of ordinary repairs"; nor, the services rendered under each of such contracts of employment being of less value than $500, was such action in violation of a further provision of the charter requiring that a contract of a department of the city involving $500 or more should be in writing and be approved by the mayor: the contracts so made by the school committee did not involve either "alterations" or "ordinary repairs."

In an action by the expert against the city for his compensation under the contracts above described, it was unnecessary to decide whether the matters upon which his advice was sought and work which was ordered as a result of that advice were "alterations" or "ordinary repairs."

It is within the powers of the school committee of a city to obtain expert assistance of the character above described and to bind the city to pay a reasonable sum therefor, if contracts therefor be not made in a manner repugnant to the provisions of the city's charter.

CONTRACT. Writ dated September 26, 1931.

The action was tried in the Superior Court before *Dillon,* J. Material evidence is stated in the opinion. The judge denied a motion by the defendant that a verdict be ordered in its favor; and ordered a verdict for the plaintiff in the sum of $985.30. The defendant alleged exceptions.

*F. T. Hammond, Jr.,* Assistant City Solicitor, for the defendant.

*R. W. Frost,* for the plaintiff.

WAIT, J. The essential question in this action is whether the city of Cambridge is bound by the action of its school committee. The facts material to its determination are as follows: Pursuant to duty imposed by G. L. (Ter. Ed.) c. 143, an inspector of the department of public safety inspected the buildings known as the Rindge Technical School — the Rindge Building, the Science Building and the Washington Building — in Cambridge, occupied as school buildings and in the general charge and superintendence of the school committee. He notified the mayor and school committee, on June 11, 1931, of the inspection, and ordered certain things to be done in the buildings to make them comply with the law. This notice recited that the law allowed thirty days for compliance with the order. The inspection was made on June 3, 1931. On June 23 the committee on buildings and grounds, a subcommittee of the

school committee, voted to recommend that the committee be authorized to employ such experts as might be needed to draw up plans and specifications for repairs to the schools; and, on the same day, voted to recommend that the plaintiff be engaged as experts to advise on items and necessary repairs at the Rindge Technical School in accord with the State inspector's report. The plaintiff was employed, examined the buildings with respect to the State inspector's communication, and, on June 29, made a report with estimate of the costs of compliance. The report dealt also with a recommendation of the inspector in regard to a structural repair in the Washington Building with an estimate of probable cost. In addition some repairs not suggested by the inspector were recommended to the committee. On July 1 the subcommittee accepted the plaintiff's report. On July 3 it voted that the chairman and the superintendent of buildings and grounds be authorized to make repairs "costing under $500." On July 6 the school committee voted to adopt the report and recommendations of the plaintiff. The cost as estimated by the report was "To alter the Rindge Building $3,170.00   To alter the Science Building 2,395.00 To alter the Washington Building 20,845.00," a total of $26,410, to which was added six per cent, $1,584.60, as an estimate for architect's services. After the report the plaintiff was employed to prepare plans and specifications sufficient to obtain estimates from builders and to obtain estimates. At a meeting held October 19, 1931, the school committee voted to adopt the votes of the subcommittee taken on June 23, July 1, and July 3. On October 1 the books, balanced monthly, showed an unexpended balance exceeding $600,000 of the appropriation of nearly $1,600,000 for the school committee for the period April 1 to December 31, 1931. The plaintiff's charge for the earlier service set out in count 1 was $466.94, and for the later, set out in count 2, $467.30. It was admitted that they were reasonable. The things required by the order to be done at the Rindge Building were to provide an exit by an iron fire escape from one of the rooms, cutting down a window and providing a door in doing it, and to provide metal-lath and hard plaster

ceilings in foundry and boiler room and fire doors in the boiler room.   At the Science Building, it required a metal-lath and hard plaster ceiling in the basement, a fire door and fire resisting vestibule at the foot of the basement stairs, and an additional egress at the southwestern end from the second floor similar to an existing egress at the other end of the building.   In the Washington Building, the order called for certain smoke partitions around certain stairs; additional doors with wire glass panels on both sides of the assembly hall; hand rails on both sides of all egress stairs; a device to secure in place seats in the balcony and in the rear of the assembly hall; additional egress for two rooms or the abandonment of use of the rooms, and at least eighteen new toilet seats and fifteen new urinals to be added, so that the regulations of the department in respect to toilets and urinals be more nearly complied with.   Attention was called to a structural defect in the building with recommendation for remedy.

The charter of the city forbade any department, board or commission to make contracts involving an amount of $500 or more except in writing; and required the approval of the mayor and the contracting department or board.   It provided: "No plans for the construction of or alterations in a school building shall be accepted, and no work shall be begun on the construction or alteration of a school building, unless the approval of the school committee and the mayor is first obtained.   This section shall not require such approval for the making of ordinary repairs."   It provided also that, among other things, the school committee "may make all repairs" and should have "control of all school buildings and grounds connected therewith."   No written contract was made with the plaintiff.   There was no evidence of any approval by the mayor.

It is the city's contention that no authority in the school committee to employ and to bind the city to pay the plaintiff is made out; that the things required by the inspector were "alterations" requiring approval by the mayor, and not "repairs" such as the school committee had authority to make without such approval; and that

the trial judge was in error in denying its motion for a directed verdict, in refusing to give certain of its requests for rulings of law, and in granting the plaintiff's motion for directed verdicts for the plaintiff on the first and second counts of the declaration.

We think the city misapprehends the situation. What the committee did was not to contract for plans and specifications and for services in making alterations or repairs of certain school buildings to comply with the order of the inspector; but was to obtain expert advice with regard to the action to be taken by it in view of that order and of its duty to make repairs. There is no question that it had power to make ordinary repairs, and a duty to do so. It was not called upon to obtain the approval of the mayor in regard to them; nor was it bound to contract in writing or to obtain the mayor's approval of a contract for an amount less than $500. At the period in the year when, ordinarily, repairs and renovations upon school buildings commonly are made, the subcommittee on buildings and grounds was confronted not only by its usual problem of repair but also by the order of the State inspector. What that order implied, what of its requirements were properly repairs, what expenditure it would make necessary, what was best to be done, were problems which might well call for expert advice. The answer might affect seriously the wisdom of undertaking repairs upon other school buildings. We think the school committee was authorized to obtain that advice. In *Rollins* v. *Salem*, 251 Mass. 468, we held that a mayor was authorized to employ, at the city's expense, an expert to advise him with regard to a schoolhouse construction contract, so that he could decide wisely upon his course of action. In *Burgess* v. *School District in Uxbridge*, 100 Mass. 132, it was held that a committee charged with a duty to report could bind the town to pay for consultation with counsel in regard to the matter. The decision in *McCaffrey* v. *Mayor of Boston*, 254 Mass. 50, rests upon specific legislative prohibition of the expense there contemplated. Recognition of the right of such a body as the school committee to incur expense in informing itself with regard to

a matter upon which it is called to act, appears in St. 1928, c. 36 (now G. L. [Ter. Ed.] c. 40, § 5, cl. 34).

The situation here differs essentially from that dealt with in *Simpson* v. *Marlborough*, 236 Mass. 210, where a school committee, not charged with the duty of erecting a school building, undertook to provide plans and specifications for the erection. Such plans and specifications as this plaintiff made were for use in describing the work to be done, in suggestions of method, in obtaining bids so that the probable expense of complying with the order could be made clear. There is no evidence they were used in actual construction; or, indeed, that the work was ever undertaken.

The law does not contemplate that officials are at liberty to incur such expense in matters about which they should be assumed to be well informed. They cannot hire others at public expense to do their thinking for them. Their right depends upon circumstances. It does not exist where, ordinarily, persons who are charged with and who have undertaken to render a service would not need expert advice in connection with it.

Our decision renders unnecessary a determination whether what was ordered to be done was properly to be classed as "alterations" or as "repairs." See *Bigelow* v. *Worcester*, 169 Mass. 390, 393. There was no error in directing the verdicts for the plaintiff. There was no denial that the work was done and the charges were reasonable. Neither contract in the first or second count called for an expenditure of $500 or more. If the school committee had authority to employ the plaintiff at the city's expense, liability was established. There was no issue of fact for a jury. There was no error in denying the defendant's motion for directed verdict in its favor, and none in the rulings made. The ruling with reference to alterations, however sound, is immaterial.

*Exceptions overruled.*