## Jeffersontown v. Cassin et al.

(Decided March 5, 1937.)

WILLIAM A. HUBBARD for appellant.

C. MAXWELL BROWN for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

Appellant is a municipal corporation assigned by

statute to the sixth class. Appellee Cassin is a member of a partnership composed of himself, Graham, an attorney, and two other persons, trading and doing business under the firm name of the "Municipal Engineering Company of Louisville."

In October, 1933, the board of trustees of the town conceived the idea of erecting a water plant, and plans were discussed which if carried out might have resulted in procuring a grant of money from the government in aid of the project.

On November 2, 1933, a written contract was entered into by appellee and the town, by its chairman of the board, wherein was recited the necessity of having made certain preliminary surveys and investigations, and the preparation of estimates, reports, plans, and specifications, the purpose of which was twofold; to advise and guide the city authorities in perfecting their plan, and as a necessary prerequisite to present to the government such persuasive data as might obtain the money grant. The town· employed appellee to do these things and to supervise the erection of the plant according to specifications. It also provided for the preparation of certain legal data by appellee; the drawing of ordinances, contracts, and perhaps other things, the combination of all of which required not only the services of a consulting and practical engineer, but a lawyer as well.

For services to be rendered, appellee was to receive an amount equal to 10 per cent. of the total cost; 2½ per cent. was to become payable upon completion of the survey, plans, specifications and the contemplated necessary data. The balance was to be paid as the work progressed; payments to be made on approved estimates from funds set apart for that purpose out of the grant from the government.

We find no record of the board's action in authorizing the mentioned contract, but there is introduced by way of unattacked records, a copy of an ordinance of December 5, 1933, ratifying an ordinance authorizing the erection of the water plant, and therein appears the following:

"That the contract entered into between the town * * * and the Municipal Engineering Company * * * a copy of which is filed herewith and made

part hereof * * * be and the same is hereby ratified and confirmed.''

It also recited that Cassin had filed the completed plans and specifications with the board, which were duly examined in regular open meeting and found to be correct and ''same are hereby finally approved, ratified and confirmed.'' This action validated the contract. Nickels v. Board of Councilmen of City of Frankfort, 111 S. W. 706, 33 Ky. Law Rep. 918; Baker v. Kelly, 226 Ky. 1, 10 S. W. (2d) 467; Masonic W. & O. Home v. City of Corbin, 229 Ky. 375, 17 S. W. (2d) 215.

Several interim meetings of the board were held, and on December 22, 1933, another ordinance was adopted authorizing the erection of the water plant; the only apparent difference in the two being that in the first ordinance bonds were to be issued to the sum of $30,-000, and in the latter this sum was raised to $36,000. The estimate of the cost of the project in the engineer's tentative set up was a little more than $50,000.

In the year 1933, an election was held for trustees to take office in January, 1934. The members of the old board constituted one ''slate'' of candidates; another group was composed of new material, seeking election on an avowed platform of repealing the waterwork's ordinance. The new board was elected. After the election, but before being inducted into office, some of the newly elected members notified the board of their intention to repeal the ordinance, and notified the local federal government officials that they ''did not want the loan.'' This notification stopped activity on the part of the federal government.

Appellee, after induction of the new board, presented its account for approval and payment, which was refused. In March, 1934, the new board repealed the ordinance and cancelled appellee's contract. On August 20, 1934, appellee filed suit against the town seeking recovery of $3,000. It was specifically alleged in addition to preliminary facts as above set out, that appellee had in part performed the contract, and that since the ordinance had been repealed, the contract canceled, appellee was entitled to recover for the services rendered; that is, it sought a recovery on a quantum meruit.

Demurrer to the petition was overruled and the

town answered denying the allegations of the petition, except so much of it as alleged annulment of the ordidance, cancellation of the contract, and its notification to the governmental authorities, saying their action expressed the will of the voters in selecting them as trustees, and it pleads in a second paragraph these facts in defense. It is also pleaded that the contract between appellee and the old board was attempted to be entered into fraudulently, and was further entered into in violation of section 3707 Kentucky Statutes, which requires competitive bidding on contracts in excess of $100. This was admittedly true.

In an amended answer the town pleaded fraud and conspiracy on the part of the contractors, in that the contract was awarded to appellee at an excessive price. It arrives at such conclusion by pointing out that when the ordinance was passed it provided for an issuance of only $30,000 in bonds; but that when the tentative program was submitted by appellee it called for a plant to cost approximately $50,000, which would have made its contract fee "an excessive charge of $4,555.37, which was excessive to the extent of 50%"; that the government found the plan to be unfeasible and never approved it, the defense based seemingly on the charge of fraud because of the alleged excessive fee, the awarding of the contract without advertising for bids, and the raise in the estimated cost of the project.

Disposing of the question of fraud at this time, it is enough to say that the pleading is far from sufficient to sustain a plea of fraud, collusion, or conspiracy. Even if it were otherwise, the proof later introduced failed altogether in sustaining such a charge. The fee may have been excessive, and it is true that a government official testifying said that he could not, or did not, approve the contract for more than 7 per cent. of the total cost. The government's disapproval of the 10 per cent. and an approval of a lesser amount would have cured this portion of the contract; this was recognized, and, according to the proof admitted by appellee.

The matter of increase in the cost of the plant could have been remedied by action of the board. It did not have to accept the finding of the engineer, though it does appear that the board later raised the issue of bonds to $36,000. The matter of reflecting the

views of the people indicates a meritorious design on the part of appellant, but the failure of the old board to "listen to the election returns" is no indication or evidence of fraud, as is neither the suggested haste with which the board acted, as may be gathered from such evidence as gives reasons for such action.

The court below sustained demurrers to the second and third paragraphs of appellant's answer. There does not seem to have been a demurrer to the amended answer, to which appellee replied, denying categorically each allegation thereof. With the issues thus formed, proof heard and instructions given, the jury returned a verdict for appellee in the sum of $500. Motion for a new trial was overruled, and this appeal is prosecuted.

Appellant urges two grounds in seeking reversal: Error of the court in permitting the jury to find for plaintiff on a quantum meruit basis, because the contract between the parties was void by reason of the failure of the authorities to comply with section 3707, Ky. Stats., and in support of its contentions cites Krieger v. Standard Printing Co., 191 Ky. 552, 231 S. W. 27, 29; Cohen v. City of Henderson, 182 Ky. 658, 207 S. W. 4; Staebler, etc., v. Town of Anchorage, 186 Ky. 124, 216, S. W. 348; Wait v. Southern Oil & Tar Co., 209 Ky. 682, 273 S. W. 473, to which might be added Worrell Mfg. Co. v. City of Ashland, 159 Ky. 656, 167 S. W. 922, 52 L. R. A. (N. S.) 880; Town of Southgate v. West, 229 Ky. 51, 16 S. W. (2d) 499; Miles Auto Co. v. Dorsey, 163 Ky. 692, 174 S. W. 502.

These authorities tend to uphold appellant's contention that a contract for construction work, without competitive bids, is void to such extent that there can be no recovery upon a quantum meruit basis. Gugenheim v. City of Marion, 242 Ky. 350, 46 S. W. (2d) 478; District of Highlands v. Michie, 107 S. W. 216, 32 Ky. Law Rep. 761.

Counsel for appellee relies on Krieger v. Standard Printing Co., supra; City of Providence v. Providence Electric Light Co., 122 Ky. 237, 91 S. W. 664, 28 Ky. Law Rep. 1015; Nicholasville Water Co. v. Board of Councilmen of Town of Nicholasville, 36 S. W. 549, 38 S. W. 430, 18 Ky. Law Rep. 592, and Board of Council-

men of Frankfort v. Capital Gas & Electric Light Co., 96 S. W. 870, 29 Ky. Law Rep. 1114. The first case does not apply for two reasons: The court found as a matter of law, that the county court clerk was authorized to purchase and provide certain election supplies without competitive bidding, so it was proper to allow him to recover upon quantum meruit in the absence of a contract made by the fiscal court, the paymaster.

It is true the court went further and said, "We have held more than once that, even where the contract declared upon is unenforceable, a quantum meruit recovery may be had if a governmental agency has accepted the services or work and had the power to make a valid contract therefor," citing the Nicholasville, Providence, and Frankfort Cases, supra. It is apparent that in thus writing, using the cases cited as a basis of the principle announced, it was overlooked that this court had very definitely overruled the three cases mentioned, holding the principle unsound. See Worrell Mfg. Co. v. City of Ashland, supra; Miles Auto Co. v. Dorsey, 163 Ky. 692, 174 S. W. 502; Town of Southgate v. West, supra.

However, there is presented in argument by appellee another question which does not appear to have been directly passed on by this court. He insists that section 3707 of our statute, which requires competitive bidding, has no application to contracts made for personal professional services. That section reads as follows:

"In the erection, improvement and repair of all public buildings and works, in all streets and sewer work, and in all work in and about streams, bays, or water fronts, or in or about embankments or other works for protection against overflow, and in furnishing any supplies or materials for the same, when the expenditure required for the same exceeds the sum of one hundred dollars, ($100.00) the same shall be done by contract, and shall be let to the lowest responsible bidder, after due notice, under such regulations as may be prescribed by ordinance." Ky. St. sec. 3707.

His position is correct. The matters contemplated in the statute are "work" and "supplies and materials," in erection, improvement and repair of public

buildings and works. "Work" may mean all labor, either corporeal or mental, but in a popular sense it is ordinarily applied to bodily labor, or that in which such is the principal factor. It seems to us to be used in the act in that sense alone. People v. Flagg, infra; Heston v. Atlantic City, 93 N. J. Law, 317, 107 A. 820; Franklin v. Horton, 97 N. J. Law, 25, 116 A. 176. In view of the authorities hereinafter cited, it would require rather a stretch of the imagination to hold that the statute quoted is intended to embrace professional services.

In Dillon Municipal Corporations (4th Ed.) vol. 11, sec. 802, after devoting several pages to the law with regard to the strict necessity of advertisement and competitive bidding where required by ordinance or statute, it is said that where competitive proposals work an incongruity and are unnecessary as a final result, as where "the requirement is of a personal skill or professional service * * * a statute requiring competitive bidding does not apply," and cites Gleason v. Dalton, 28 App. Div. 555, 51 N. Y. S. 337, 341, which had to do with the furnishing of a water supply. The court in that case distinguished the furnishing of water from the building of a water plant, and held that same was not contemplated in a law requiring competitive bidding for "all contracts to be made or let for work to be done or supplies to be furnished." The court in that case cited People v. Flagg, 17 N. Y. 584 (2d., 5 Abb. Prac. [N. Y.] 232) and said:

> " 'It would be an unreasonable and mischievous construction of the statute to apply it to services which require in their performance scientific knowledge or professional skill.' The particular phrase under consideration in that case was, 'all work to be done and supplies to be furnished.' The character of the service therein was making a survey and furnishing a map of the wharves and piers of New York City."

Quoting Harlem Gaslight Co. v. Mayor, 33 N. Y. 309, the court continued:

> "If the contract requires professional services, those of an engineer, a physician, lawyer or an artist, or if it requires services of any kind to be furnished upon a sudden or unforeseen emergency,

of greater value that $250.00, and these things can only be obtained through the forms prescribed by statutes, they can not be obtained at all, for these things can not become the subject of a competitive offer to be consummated by a written contract with the person making the offer. Other cases hold to a similar doctrine, and commend themselves as being the true construction of legislative intention. Matter of Petition of Dugro, 50 N. Y. 513; City of Hartford v. Hartford Electric Light Co., 65 Conn. 324, 32 A. 925.''

In McQuillon on Municipal Corporations (2d Ed.) sec. 1292, it is said:

"Provisions as to competitive bidding have been held not to apply to contracts for personal services depending upon the peculiar skill or ability of the individual, such as the services of a court stenographer, an attorney-at-law, a superintendent or architect to supervise and make suggestions relative to work let under competitive bidding, or a consulting or supervising engineer. And generally the requirement does not apply to the employment of a professional man, in which case the authorities have a discretion as to his qualifications.''

In the City of Newport News v. Potter (C. C. A.) 122 F. 321, 331, the provision of the charter was that "all contracts for the erection and construction of public improvements shall be let to the lowest responsible bidder.'' Potter, an engineer, was invited to and did prepare and present plans for a sewer system. In holding that services rendered by him were not such as contemplated in the charter, the court said:

"If the city had desired the services of a counsellor at law concerning some contemplated public improvements, it would not be seriously contended that the lowest responsible bidder must have been employed. And it seems to us that the services of a consulting and supervising engineer are in the same category as those of a legal advisor.''

In Rollins v. City of Salem, 251 Mass. 468, 146 N. E. 795, 796, McLaughlin and Burr were consulting engineers, employed by the city to make preliminary

design and plans for a public school house, for which they were to receive $1,500. The payment was contested by Rollins because the city had not advertised for competitive bids for any "contract for construction work or for the purchase of apparatus, supplies or materials, whether for repairs or original construction, * * * the estimated cost of which amounts to two hundred dollars or more." The court said in finding against Rollins:

> "The employment * * * was not a contract for construction, but is an expenditure for information and advice from competent architects to enable the Mayor to decide what action he ought to take in the discharge of his duties of administration."

In Stratton v. Allegheny County, 245 Pa. 519, 91 A. 894, 896, the charter provided that "all contracts relating to city affairs shall be let to the lowest responsible bidder after reasonable notice." The question arose over a contract with an architect to supervise the building of a bridge. The court wrote:

> "It has never been held so far as we have been able to ascertain, that the above provisions apply in the making of contracts for the employment of attorneys, physicians, engineers, or others, involving professional skill. Certainly an architect's services do involve professional skill, knowledge, and judgment. Scientific knowledge or professional skill has also been regarded as furnishing a ground for an exception to the statutory rule."

Many other cases expressing like opinions may be found in notes under the section quoted above from McQuillon, as well as in 44 C. J. sec. 102, p. 1028, and annotations under Tackett v. Middleton (Tex. Com. App.) 280 S. W. 563, 44 A. L. R. 1143. Taylor v. Riney, 156 Ky. 393, 161 S. W. 203, 204, appears to be the only case in our jurisdiction which even remotely approaches the question. There was questioned the power of the fiscal court to employ an accountant. Bids had been made by several accountants and the court accepted a high bid in the face of the fact "that the price at which some of these bidders offered to do the work was a good deal less than the offer made by Pedley, whose bid was accepted." This court said in speaking of the court's action,

"They had the right to exercise a sound discretion in making the employment, and to accept the proposal of that bidder who, in their judgment, was best qualified to execute the work in a satisfactory manner, although his bid might be higher than the bids of other accountants. Necessarily in matters like this the fiscal court is invested with a large measure of discretion."

After a careful research we have found no case which holds contrary to the views which have been expressed above. Three suggested contrary cases are Commonwealth ex rel. Boyle v. Mercer, 165 Pa. 1, 30 A. 501; State ex rel. Lambert v. Coad, 23 Mont. 131, 57 P. 1092; State ex rel. Baen v. Yeatman, 22 Ohio St. 546. But in each of these the contracts appear to have been for copying records (not requiring professional skill) and under statutes quite different from ours and in which "expenditures" of more than a certain sum required bids.

From what we have observed it seems clear that the contract was not fraudulent in any sense of the word, nor was it entered into contrarily to the statute quoted. It was a legal contract, and since it was canceled and without any other cause than given, the recovery upon a quantum meruit was proper. Madison, etc., Lumber & Dev. Co. v. Coyle, 166 Ky. 108, 178 S. W. 1170; Krieger v. Standard Printing Co., supra; Superior Coal Co. v. Runyon, 184 Ky. 255, 210 S. W. 945; Gordon, etc., v. Morrow, 186 Ky. 713, 734, 218 S. W. 258. Nor is our conclusion affected by Town of Southgate v. West, supra, which may in all respects be easily distinguished from the case at bar.

Judgment affirmed.