TREASURER OF ESSEX COUNTY *vs.* COUNTY COMMISSIONERS OF ESSEX & others.[1] March 28, 1979. On July 19, 1974, the Director of the Bureau of Building Construction (director), acting for the Commonwealth under the authority of G. L. c. 6A, §§ 22, 23, and 24 (now G. L. c. 7, §§ 40, 41, and 42; see St. 1975, c. 311, §§ 1, 2), engaged an architect to design and supervise the construction of an Essex County court house. The general contract for that construction was executed on January 19, 1976. See G. L. c. 7, §§ 39-48. Six months after the architect was engaged by the Commonwealth, the county commissioners of Essex County (commissioners) entered into a contract with P.C.M., Inc. (PCM), to provide management services in the construction of the same court house. The present action for a declaratory judgment was brought by the treasurer of Essex County (treasurer), pursuant to G. L. c. 35, § 11, to determine the legality of an order for payment to PCM submitted by the commissioners for alleged services performed by PCM under its contract with the county. PCM appeals from a judgment of the Superior Court determining that the contract on which the order for payment was based "is null and void," and that no payment was due PCM under the contract. There was no error. 1. PCM's reliance upon the provisions of G. L. c. 34, § 17 (as amended by St. 1973, c. 908, § 1), is misplaced. That statute, as amended, provided that the commissioners could hire "management consultants to supervise the building ... of public buildings ... *under contracts awarded under the provisions of this section*" (emphasis supplied). The governing contract in this instance was not awarded under the provisions of § 17 but rather, as previously stated, under the provisions of G. L. c. 6A, §§ 22, 23, and 24. That contract was between the Commonwealth and its architect. Neither the commissioners nor PCM were parties to it, and no assignment was made by the architect to either PCM or the county of any rights or obligations under that contract. Nor was the Commonwealth or its architect a party to the

---

[1] P.C.M., Inc., and the Director of the Bureau of Building Construction for the Commonwealth.

contract between the commissioners and PCM. 2. PCM's contention that, aside from the express authority conferred by G. L. c. 34, § 17, the commissioners had implied authority pursuant to G. L. c. 34, §§ 3 and 14 (as in effect prior to St. 1978, c. 478, §§ 17, 18) to hire a management consultant, is also unavailing. Although a public entity may obtain expert advice regarding tasks it is obliged to perform (*William W. Drummey, Inc. v. Cambridge*, 282 Mass. 170, 174 [1933]; *Day* v. *Newton*, 342 Mass. 568, 570 [1961]), the authority to expend money for such advice will not be found where, as here, control of the task is vested in another, and where the Legislature has prohibited the expense in the absence of approval by the director. G. L. c. 6A, § 24 (now c. 7, § 42). Compare *McCaffrey* v. *Mayor of Boston*, 254 Mass. 50, 51-52 (1925). The parties stipulated that the director had not approved the contract between PCM and the commissioners. This is not a case where we choose to exercise our power to vacate the stipulation on the ground that it was "improvident or not conducive to justice." Compare *Loring* v. *Mercier*, 318 Mass. 599, 600-601 (1945); *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 114-115 (1973). 3. The Superior Court judge was right in his conclusion that, in the circumstances, the commissioners had no authority to hire PCM as a consultant and that, therefore, the commissioners' contract with PCM created no obligation binding the treasurer to pay PCM from county funds for any services rendered by PCM to the commissioners.

*Judgment affirmed.*

*S. Mac Gutman*, of New York, for P.C.M., Inc.

*James T. Ronan* for the plaintiff.

*Herbert Abrams*, Special Assistant Attorney General, for the Director of the Bureau of Building Construction.