**SOUTHEAST BULLITT FIRE PROTECTION DISTRICT,**
Appellant

v.

**SOUTHEAST BULLITT FIRE AND RESCUE DEPARTMENT,**
Appellee

**NO. 2016–CA–000030–MR**

Court of Appeals of Kentucky.

MAY 5, 2017; 10:00 A.M.

ORDERED PUBLISHED: JULY 28, 2017; 10:00 A.M.

■■■■■■■

BRIEFS FOR APPELLANT: Joseph J. Wantland, Shepherdsville, Kentucky, Maurice A. Byrne, Jr., Louisville, Kentucky.

ORAL ARGUMENT FOR APPELLANT: Maurice A. Byrne, Jr., Louisville, Kentucky.

BRIEF AND ORAL ARGUMENT FOR APPELLEE: Thomas E. Clay, Andrew Thomas Lay, Louisville, Kentucky.

BEFORE: COMBS, MAZE AND STUMBO, JUDGES.

## OPINION

STUMBO, JUDGE:

Southeast Bullitt Fire Protection District (hereinafter referred to as the District) appeals from an order of the Bullitt Circuit Court which found that a contract between the District and Southeast Bullitt Fire and Rescue Department (hereinafter referred to as the Fire Department) was enforceable. The District claimed the contract was void because it was not entered into after a public bidding process. The court found that the contract did not violate the Kentucky Constitution or Kentucky Revised Statutes. We find no error and affirm.

The District is a fire protection district created by Kentucky Revised Statute (KRS) Chapter 75 for the purpose of providing fire protection services to the citizens in its district. The Fire Department was incorporated in 1979 as a non-profit entity pursuant to KRS Chapter 273 and created to provide fire protection services to the fire protection district at issue. The District entered into a contract with the Fire Department in 1979 to provide fire protection services. The contract required, among other things, that the Fire Department furnish fire protection services for the area and the District would pay the net proceeds of the Fire Protection Tax revenue collected to the Fire Department. The Fire Department would use these funds to provide the required fire protection services.

The Fire Department has continuously provided fire protection services to the District since 1979. The contract has undergone minor revisions over the years and the contract was last renewed in 2013. The contract allows either party to terminate the agreement, but only after written notice. Once the written notice is received, the contract will terminate ten years after the notification date. In early January of 2015, the District's board held a special meeting in order to declare the contract void. The District's main issue with the contract is that it was not entered into after a public bidding process. The District claims the contract violates KRS 424.260 and Kentucky Constitution (Ky. Const.) §§ 157(b) and 164.

On January 23, 2015, the Fire Department filed the instant underlying action and sought a declaratory judgment finding the contract enforceable. On December 29, 2015, the trial court found the contract valid and enjoined the District from declaring it unenforceable. This appeal followed.

■ The District's first argument on appeal is that the contract is void because it violated the public bidding provision in KRS 424.260. KRS 424.260 states in relevant part:

(1) Except where a statute specifically fixes a larger sum as the minimum for a requirement of advertisement for bids, no city, county, or district, or board or

commission of a city or county, or sheriff or county clerk, may make a contract, lease, or other agreement for materials, supplies except perishable meat, fish, and vegetables, equipment, or for contractual services other than professional, involving an expenditure of more than twenty thousand dollars ($20,000) without first making newspaper advertisement for bids.

The District is correct that the fire protection contract was not publically advertised; however, the Fire Department argues that it provides a "professional service" and no public bidding was required. The trial court held that the Fire Department provided professional services and we agree with that conclusion.

Professional services have been defined as those services requiring "scientific knowledge or professional skill". *Jeffersontown v. Cassin*, 267 Ky. 568, 102 S.W.2d 1001, 1005 (1937) (citation and quotation marks omitted). There is limited case law on this issue, but what is available provides some examples of professional services. *Jeffersontown* stated that an engineer, doctor, lawyer, artist, court stenographer, architect, or superintendent to supervise work being done under competitive bidding are considered professional services. *Id.* In *McCloud v. City of Cadiz*, 548 S.W.2d 158 (Ky. App. 1977), banking and insurance activities were deemed professional services which did not require public advertisement for bids. *Id.* at 162.

We believe that the Fire Department provides professional services; therefore, advertisements for public bidding were not required. Evidence in the record, in the form of a letter from the Kentucky Fire Commission, shows that the Fire Department is recognized by the Kentucky Fire Commission as a legitimate fire department. The Kentucky Fire Commission promulgates "administrative regulations ...

to create a program for recognition and annual certification of volunteer fire departments." KRS 75.410(1). "In order to be recognized and certified, a volunteer fire department shall be organized pursuant to KRS 75.010, KRS 67.083, KRS Chapter 95, or KRS Chapter 273." KRS 75.410(2).

The parties stipulated that the Fire Department was organized pursuant to KRS 273. In addition, the record contains information regarding the training the firefighters must undergo to become certified. Every volunteer firefighter must complete a minimum of 20 hours of training before he or she can participate in an "emergency response activity." Further, volunteer firefighters must achieve 150 hours of training within the first two years and 20 hours additional training annually.

The trial court stated:

Firefighters require extensive training and expertise in order to fight fires. Firefighters must pass extensive physical and intellectual testing. Furthermore, there are numerous certifications required in order to become a certified fire department in compliance with state statutes. The job requires more than menial repetition and requires significant skill and training. The District could not just pick a random person off the street and expect them to be able to fight a fire.

We agree that fighting fires requires professional skill; therefore, we believe the trial court was correct in finding that the contract for fire protection services did not require advertisements for public bidding pursuant to KRS 424.260(1).

■ The District's next argument is that the contract at issue violates Ky. Const. § 157b.

Prior to each fiscal year, the legislative body of each city, county, and taxing district shall adopt a budget showing

total expected revenues and expenditures for the fiscal year. No city, county, or taxing district shall expend any funds in any fiscal year in excess of the revenues for that fiscal year. A city, county, or taxing district may amend its budget for a fiscal year, but the revised expenditures may not exceed the revised revenues. As used in this section, "revenues" shall mean all income from every source, including unencumbered reserves carried over from the previous fiscal year, and "expenditures" shall mean all funds to be paid out for expenses of the city, county, or taxing district during the fiscal year, including amounts necessary to pay the principal and interest due during the fiscal year on any debt.

Ky. Const. § 157b. As it pertains to this case, this section requires the District have a balanced budget for each fiscal year.

The District argues that the contract violates this section because of the ten-year termination term. The District believes that when it renewed the contract in 2013, it spent ten-years' worth of tax revenue. This argument is without merit. This section of the Kentucky Constitution only prohibits expenditures in excess of revenues. It does not prohibit the District from creating obligations beyond one year. The District did not spend ten-years' worth of tax revenue when it renewed the contract. Each year the District will only spend those tax revenues collected.

 The District also claims that the fire protection contract violates Ky. Const. § 164 which states:

No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway.

The District argues that it granted the Fire Department a franchise to operate a fire department; therefore, public bidding was required.

A franchise is generally defined as a right or privilege granted by a sovereign power, government or a governmental entity to a party to do some act which such party could not do without a grant from the government. A franchise is a grant of a right to use public property or at least the property over which the granting authority has control.

*E.M. Bailey Distrib. Co. v. Conagra, Inc.,* 676 S.W.2d 770, 771 (Ky. 1984).

In order to fully analyze this argument, we must also look to Ky. Const. § 163. Ky. Const. § 163 and § 164 "must be read together, as the right to occupy the streets and public ways conferred by section 163 can only be granted in the manner provided in section 164." *Rural Home Tel. Co. v. Kentucky & Indiana Tel. Co.,* 128 Ky. 209, 107 S.W. 787, 790 (1908). Ky. Const. § 163 states:

No street railway, gas, water, steam heating, telephone, or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained; but when charters have been heretofore granted conferring such rights, and work has in good faith been begun thereunder, the provisions of this section shall not apply.

To summarize, Ky. Const. §§ 163 and 164 concern public utilities and a government body granting franchises to these utilities in order for them to provide their services to the citizenry. The issue before us then is whether fire protection services are utilities that require a franchise and therefore must be bid for publically. We do not believe fire protection services are subject to these sections of the Kentucky Constitution.

■ First, we must note that the requirements of Ky. Const. §§ 163 and 164 are not limited to the utilities listed in § 163.

We do not believe the right granted cities by this section is today limited to these specific utilities. The purpose of the section was to give the city control of the streets, alleys and public grounds and to make it possible for the city to provide the services of these utilities to its inhabitants. Therefore, the right granted is not and properly should not be restricted to those utilities enumerated, but applies to all utilities and services which might today be proper subjects for control, when the original intent and purpose of the act is considered.

Ray v. City of Owensboro, 415 S.W.2d 77, 79 (Ky. 1967). Other public utilities which have required adherence to these sections of the Kentucky Constitution are: cable television service, City of Owensboro v. Top Vision Cable Co. of Ky., 487 S.W.2d 283 (Ky. 1972); an ambulance service, Ray, supra; garbage collection, City of Bowling Green v. Davis, 313 Ky. 203, 230 S.W.2d 909 (1950); and solid waste disposal, E. Kentucky Res. v. Arnett, 934 S.W.2d 270 (Ky. 1996).

It is quite clear that the framers of the Constitution meant to vest the municipality with the right and power to control the original occupation of its public ways and streets by the utilities mentioned in this section 163 of the Constitution. A reading of the debates of the Constitutional Convention bearing upon this section 163 of the Constitution will disclose that the main and actuating purpose of the framers of that instrument was to prevent the Legislature from authorizing the indiscriminate use of the streets of the city by public utilities without the city being able to control the decision as to what streets and what public ways were to be occupied by such utilities.

Hatcher v. Kentucky & W. Virginia Power Co., 280 Ky. 583, 133 S.W.2d 910, 915 (1939).

At first blush, it may seem as though a volunteer fire department would be subject to these provisions of the Kentucky Constitution; however, we believe a fire department is distinguishable from the types of utilities listed above. The above listed utilities are for-profit organizations that the government allows to occupy some part of its public lands or roadways. Here, this volunteer fire department is a nonprofit organization and is considered by the laws of this state to be an agent of the Commonwealth of Kentucky. KRS 75.070. We believe this distinction removes fire protection services from the utility category which would require a franchise and public bidding pursuant to Ky. Const. § 164.

■ The District's final argument on appeal is that the fire protection services contract violated KRS 75.120. KRS 75.120 states in pertinent part that "[t]he board shall control the fire department or departments within their district and the property and equipment in these departments." This issue was not raised in the trial court; therefore, we will not consider it. "The Court of Appeals is without authority to review issues not raised in or

decided by the trial court." *Regional Jail Authority v. Tackett*, 770 S.W.2d 225, 228 (Ky. 1989); *see also Shelton v. Commonwealth*, 928 S.W.2d 817, 818 (Ky. App. 1996). "[E]rrors to be considered for appellate review must be precisely preserved and identified in the lower court." *Skaggs v. Assad, by and through Assad*, 712 S.W.2d 947, 950 (Ky. 1986)(citation omitted).

Based on the forgoing, we affirm the judgment of the Bullitt Circuit Court.

ALL CONCUR.