## City Of Hazard et al. v. Salyers et al.
## City Of Hazard v. Goodlette.

June 24, 1949.

Rehearing denied December 8, 1949.

W. E. Faulkner, J. W. Craft, Jr., Franklin P. Hays and Skaggs, Hays & Fahey for appellants.

Don A. Ward and Alva A. Hollon for appellees.

STANLEY, COMMISSIONER—Reversing.

The Board of Commissioners of the City of Hazard on May 16, 1949, adopted an ordinance authorizing and providing for the issuance and payment of public project revenue bonds to the amount of $900,000 for the purpose of defraying the cost of extending and improving the city's waterworks system and of acquiring land and erecting a municipal gymnasium or field house with a swimming pool and other recreational facilities. The present purpose, however, is to postpone the construction of the swimming pool and some other facilities and to issue not in excess of $450,000 of bonds. Of the proceeds $100,000 will be used to improve and extend the waterworks system and the balance for the field house. The action was taken under authority of KRS, Chapter 58, which is an act of 1946. The city had previously contracted with a firm of engineers to prepare and submit preliminary plans and estimates and, when agreed upon, to complete the plans and specifications for the work in consideration of a percentage of the cost. It had also contracted with the Bankers Bond Company to advise the city on the financial questions, to prepare the necessary legal documents and to dispose of the bonds when issued. These contracts were made without advertising for competitive bids for these services.

A suit was brought by taxpayers alleging the illegality of the proposition and the contracts and seeking an injunction accordingly. The city filed a suit for a declaratory judgment approving the proposition. The two cases were consolidated and considerable evidence taken. The circuit court adjudged that the city had no right to issue any of the bonds and enjoined the city and its officials accordingly.

The opinion of the circuit court recites the fact that the city had owned and operated its waterworks plant since 1922 and had "kept pace" with the needs of the population through the use of its revenues; that no steps had been taken to prepare plans and specifications for future extensions and additions other than by the ordinance under attack; and that the apparent purpose

of joining the proposed improvements and extensions with the erection of the field house and recreational facilities was to insure the sale of the revenue bonds. The court was of opinion that there was no legislative intent to permit an existing waterworks system already paid for and in good financial condition to be combined with the proposed recreational facilities for the purpose of revenue bonds. Further, that KRS 96.540 prohibits the encumbrance of the system or its income without the assent of two-thirds of the electorate, and the action taken and proposed is so prohibited notwithstanding revenue bonds may be issued under the provisions of KRS 96.350 and 96.520 for the extension and improvement of joint waterworks and sewage system, with exception the court construed as having no application.

Other grounds of challenge not considered by the court are that the city had not created a recreational commission to operate the project and that the contracts made with the engineers and the bond company were void because of the absence of public advertisements for bids. We may summarily dispose of these two points.

Chapter 58 of the statute does not require the creation of a recreational commission. Such a body is provided for alternatively when playgrounds and recreational centers are established under the terms of Chapter 97 of the statutes.

The City of Hazard has incurred no financial obligation whatever. With the exception of $100, the expenses incurred have been borne by the citizens acting privately. The obligations to the engineering firm and the financing company are contingently payable out of the proceeds of the revenue bonds. The power of a city to contract for personal or professional services of the character rendered and to be rendered in this instance without receiving competitive bids is sustained by the authorities generally as not being embraced in statutes which require bids for construction work, furnishing of supplies, etc. It is so held in Jeffersontown v. Cassin, 267 Ky. 568, 102 S. W. 2d 1001, which construed section 3707, Kentucky Statutes, now KRS 94.600, relating to public works in cities of the fifth and sixth class. KRS 94.130 relating to public works in cities of the fourth class, of which Hazard is one, is comparable.

On the main point, we do not think the record altogether bears out the conclusions of the court with respect to what has been done in relation to the improvement of the waterworks. The mayor of the city and one of the consulting engineers stated $100,000 as a desirable and needed expenditure in order to make the system adequate for present needs. It was quite satisfactorily shown that the reservation of power to issue the remainder of the $900,000 proposed bond issue contemplates the expenditure of the greater part of the sum upon the waterworks system as it may become necessary. The lesser part, it is contemplated, will be expended for the construction of a public swimming pool in connection with the field house.

It was held in 1938 that under the current statutes a city of the fifth class could not pledge the revenue from its existing waterworks to amortize bonds to construct a sewer system to be connected with it. Jones v. Stearns, 275 Ky. 729, 122 S. W. 2d 766. But it is pointed out in Dunn v. City of Murray, 306 Ky. 426, 208 S. W. 2d 309, that that decision was rendered before the enactment of Chapter 58, KRS. In that case we held that there is legal power in a city of the fourth class to issue revenue bonds under Chapter 58, KRS, for the improvement of a waterworks plant and construction of a sewer system to be combined and maintained as one project and the retirement of bonds previously issued for the acquisition of waterworks. It is there declared that the combined system is a public project within the meaning of KRS 58.010 et seq. In the earlier case of McKinney v. City of Owensboro, 305 Ky. 253, 203 S. W. 2d 24, it was held the construction of a field house to be used as a public auditorium and gymnasium, including a swimming pool, was an appropriate municipal enterprise and proper object of revenue bonds under this statute. The more recent case of Walker v. City of Maysville, 310 Ky. 118, 220 S. W. 2d 96, approved similar financing of the improvement and extension of a sewer system.

For ready reference, we quote the definition of "public project" as given in KRS 58.010(1):

" 'Public project' means any lands, buildings or structures, works or facilities suitable for and intended

for use as public property for public purposes or suitable for and intended for use in the promotion of the public health, public welfare or the conservation of natural resources, including the planning of any such lands, buildings, structures, works or facilities, and shall also include existing lands, buildings, structures, works and facilities, as well as improvements or additions to any such lands, buildings, structures, works or facilities.''

It is to be noted that the different kinds of structures or facilities coming within the term are stated throughout in the plural form. But a water plant and a field house are of very different and distinct types or classes. The only physical relation or connection is the use of water in the latter. We do not think that has any relevancy. To combine them is indeed tying together two unrelated projects as 'one, yet each separate and apart serves the public welfare in a different way. There is nothing in the statutory definition which would impliedly prohibit a combination of different works or facilities, even an existing one with a new one, for financing as one project so long as they are suitable and intended for public use and promote or contribute to the public health or welfare. This gives the city broad discretionary authority.

KRS 58.020 lends aid to the ascertainment of the legislative intent. It provides that for the purposes of defraying the cost through issuance of revenue bonds ''a governmental agency acting separately or jointly with one or more of any such agency, may acquire, construct, maintain, add to and improve any public project as defined in KRS 58.010'' whether it be located within or without or partly within and partly without the territorial limits of such agency or agencies. A ''governmental agency'' is defined as any department or agency of the Commonwealth, or ''any county, city, agency or instrumentality or other political subdivision.'' KRS 58.010(2). If different governmental agencies, perhaps exercising unrelated functions, may unite to construct and finance facilities that will serve a combined territory, it would appear that it was not the legislative intent to prohibit a single agency from combining one or more facilities embraced by the term ''public project.''

It is an important consideration that a city owns,

maintains and operates its waterworks system in the exercise of a proprietary or private, as distinguished from a governmental, capacity. We have so held in a case which involved this very plant. City of Hazard v. Duff, 287 Ky. 427, 154 S. W. 2d 28. Consequently, there is no mortgaging of any part of the future revenues of the city as a municipal government in connection with revenues of a private enterprise. The purchasers of the revenue bonds will have no right to look to the revenues of the city itself for security. Whether it would be competent to unite an existing governmental facility with a new nongovernmental enterprise is a question not now before us.

The question seems to be resolved into one of abuse of discretionary power by the city commissioners of such a character and extent as authorizes the courts to interfere. In this consideration it is still to be borne in mind that we are not dealing with the exercise of governmental power, but action in a proprietary capacity.

The evidence shows the great demand for a public field house composed of a gymnasium, suitable as an auditorium, and appropriate appurtenances. The population of Perry and contiguous counties, from which patronage is being drawn, is 231,579, according to the 1940 census. There is an extraordinary spirit and interest in basketball contests and community musical and theatrical entertainments. The present school gymnasium is wholly inadequate for the ordinary regular schedules. The proposed larger and improved facilities would permit district and regional tournaments and bring many visitors to the city. All this is regarded as promoting its welfare. It is proved that substantial economies would be effected by financing, planning and constructing the waterworks improvements and building of the field house, also the management and operation, jointly. A conservative estimate of the net annual revenues to be expected from the field house is $37,250. The more enthusiastic and optimistic Junior Chamber of Commerce estimated it to be $93,712. The lesser sum is more than ample to carry and amortize the debt. The engineering experts estimated the net revenues from the waterworks to be equal to one and one-half times the amount necessary to pay the interest and principal of all the bonds which it is contemplated will be issued

presently to defray the cost of construction of both the extensions and improvements to the waterworks system and the construction of the field house. We cannot regard the venture as an abuse of discretionary authority.

Finally, the legislature has defined a "public project" as embracing one or more of the public instrumentalities described, and has granted authority to the city to embark upon the various enterprises where they are for public use and promote public welfare. The legislature was not prohibited by the Constitution from conferring this power. It is a trite saying that the wisdom or the imprudence of legislative action is no concern of the courts. So long as action by the General Assembly, or, in the instant application, by the respective governmental agencies does not go beyond constitutional limitations, such as upon the exercise of arbitrary power or the incurring of a debt in excess of the amounts permitted, the courts may not interfere.

We are of opinion, therefore, that the judgment is erroneous and that the trial court should have declared the action taken by the city commissioners to be valid.

The judgment is accordingly reversed.

Judge Cammack dissenting.