## WILLIAMS et al. v. CITY OF BARBOURVILLE.

Court of Appeals of Kentucky.

Feb. 22, 1952.

H. M. Tye, Barbourville, for appellants.

Kenneth H. Tuggle, Charles G. Cole, Jr., Barbourville, Skaggs, Hays & Fahey, and Franklin P. Hays, all of Louisville, for appellee.

CAMMACK, Chief Justice.

This is an appeal from a judgment validating a proposed bond issue by the City of

Barbourville to erect a flood wall and also a bond issue for the construction of a sewer system by the City. The City brought an action against R. E. Williams, a resident and taxpayer of the City, to test the validity of the bond issues. The flood wall project will be discussed first.

The city council enacted an ordinance on September 20, 1949, calling for an election to determine if the City should incur an indebtedness of $260,000 for the purpose of constructing a flood wall. On November 8, 1949, more than two-thirds of those voting approved the $260,000 expenditure. The city council, on November 2, 1950, enacted an ordinance providing for the issuance of Flood Control Bonds in the amount of $260,000 and the levy of a tax sufficient to pay the principal and interest and authorizing the public sale of the bonds. The assessment preceding the last assessment for city taxes in the City showed the value of assessable property to be $2,046,723, plus $141,000 in bank shares. The debt of a fourth class city is limited by Section 158 of the Constitution to an amount equal to five per cent. of the value of the taxable property in the City. The City concedes that this indebtedness will exceed the constitutional limitation. In order to circumvent this limitation the City contends that a state of emergency exists and it is authorized by Section 158 of the Constitution to exceed the debt limitation, since it may be exceeded in case of an emergency when the public health and safety so require.

■ The facts in this case are similar to those in Hill v. City of Pineville, 314 Ky. 359, 235 S.W.2d 776. Barbourville is located on the Cumberland River and is subjected to recurring floods which cause extensive property damage. During these floods approximately eighty per cent. of the area of the City is submerged in whole or in part. Silt, debris and raw sewage are left on the streets when the water recedes. These conditions create a serious health menace and tend to produce epidemics. In recent years the timber of the Cumberland watershed has been depleted to a great extent; consequently, there is much soil erosion, which tends to fill the river bed, and this in turn materially affects the height of the flood waters. Three weeks after the decision in the Pineville case, Barbourville suffered the second worst flood in its history. Under similar facts, we held that an emergency existed in Pineville, which authorized the City to exceed the debt limitation of Section 158 of the Constitution. The reasoning in that case applies with equal force to the situation in Barbourville. It is our conclusion that an emergency exists and the City of Barbourville is authorized to exceed the constitutional debt limitation.

■ The question arises as to whether the City may levy a tax in excess of the maximum rate specified in Section 157 of the Constitution. Section 159 of the Constitution provides that, when a city is authorized to contract an indebtedness, it shall be required to provide for the collection of an annual tax sufficient to pay the interest and create a sinking fund for the payment of the principal within not more than forty years from the time of contracting the same. In Ballard v. City of Shelbyville, 180 Ky. 135, 201 S.W. 452, the City issued bonds for the construction of a sewer system. It was held that, where a bond issue was authorized by a vote of the people, it is the duty of the City, under Section 159, to levy an additional tax, if it be necessary, to provide for the payment of the interest on the bonds and for a sinking fund for the payment of the principal, even though it may exceed the maximum tax rate. We have declared that it was the intent of the framers of the Constitution to prohibit the creation of indebtedness by taxing districts without making provisions for its payment. Griffin v. Clay County, 304 Ky. 592, 201 S.W.2d 733. Since this is an authorized indebtedness within Section 158, provision must be made for its payment in order to carry out the intent of the framers of our Constitution. It is not only proper, but it is the duty of the City to levy a tax in excess of the maximum rate specified by Section 157.

■ The appellants contend that the thirty year maturity date of the bonds violates Section 159, which provides "for the payment of the principal thereof, within not more than forty years from the time

of contracting the same." Such a construction would require all bonds issued by a city to mature at a minimum and maximum period of forty years. A number of cases have held that the Legislature may not require the bonds issued by a taxing district to mature within a period of less than forty years. Fiscal Court of Estill County v. Debt Commission of Kentucky, 286 Ky. 114, 149 S.W.2d 735; Fox v. Boyle County, 245 Ky. 27, 53 S.W.2d 192; City of Winchester v. Nelson, 175 Ky. 63, 193 S.W. 1040. In the Estill County case it was said that it was not competent for the Legislature to nullify the plan of financing authorized by the Constitution or to lessen the range of discretion left to local government in such matters. Taxing districts may provide for the maturity of their obligations within the period fixed by the Constitution. Estill County was permitted to establish a thirty-eight year maturity date for the bonds. These cases lay down the principle that a taxing district may in its discretion provide for the maturity of its bonds within a period of less than forty years. Therefore, it was proper for the City of Barbourville to issue bonds that would mature within thirty years.

On November 2, 1950, the city council enacted an ordinance authorizing the issuance of $800,000 of City of Barbourville, Kentucky, Utility Revenue Bonds for the purpose of constructing a sewer system and making improvements and extensions to the existing water and electric system. The City is operating under Chapter 58 of the Kentucky Revised Statutes and has followed the procedure set out in that Chapter. On November 15, 1950, the ordinance was amended and the bonds are to be issued under the ordinance as amended.

■ The existing water and electric system serves customers within and without the city limits and the proposed unified system will furnish water, electric and sewer service to customers within and without the city limits. Such a project is authorized by KRS 58.020. Walker v. City of Maysville, 310 Ky. 118, 220 S.W.2d 96. The City proposes to combine the existing water and electric system with a new sewer system and to secure payment of the interest and principal of such revenue bonds from the revenue of the combined project. The sum of $500,000 will be used to construct the new sewer system and $300,000 will be used for improvements and extensions to the existing light and water plant.

In City of Hazard v. Goodlette, 311 Ky. 667, 224 S.W.2d 420, we held that Hazard could issue revenue bonds to defray the cost of improving the existing waterworks system and to acquire land for the construction of a field house and swimming pool. The revenue from the combined operation was pledged to secure the payment of the interest and principal of such bonds. Barbourville proposes to use the same method. A sewer system which is used for the public health and welfare is a public project without question. On authority of the Hazard case Barbourville is authorized to issue bonds for the proposed project. These revenue bonds will not constitute an indebtedness of the City.

■ It is contended that the City should have proceeded under KRS 94.160 and 94.180. KRS 94.160 provides an alternate method for the acquisition and operation of a sewer system and the City can properly construct such a system under Chapter 58. KRS 94.180 was repealed on March 25, 1950. KRS 94.291 to 94.325 also provide a method of financing public improvements in all cities other than cities of the first class. It is specifically stated that these sections shall not affect KRS 94.160 and 94.170. It follows that KRS 94.291 to 94.325 provide an alternate method which the City may utilize and do not preclude the City from proceeding under Chapter 58. The pledging of the revenue of the water and electric system does not contravene KRS 96.540, since KRS 58.040 specifically authorizes an encumbrance of this revenue.

Judgment affirmed.