CITY OF MT. VERNON, Kentucky, Appellant,

v.

Grant BANKS et al., Appellees.

Court of Appeals of Kentucky.

June 26, 1964.

Allen & Clontz, Mt. Vernon, for appellant.

Fritz Krueger, Somerset, for appellees.

CULLEN, Commissioner.

The City of Mt. Vernon appeals from a judgment of the Rockcastle Circuit Court invalidating an ordinance of that fifth-class city. KRS 81.010. The ordinance in question fixed a rate schedule for customers of the city-owned water plant. The ordinance also imposed a sewer charge rate in a sum equal to 50% of the total monthly water bill.

The city attacks the judgment of the lower court on the basic ground that the evidence does not warrant the determination of the lower court that the rates are unreasonable.

The questioned ordinance was adopted August 16, 1962, and by its terms increased the water rates to all customers, whether inside or outside of the limits of Mt. Vernon. The ordinance made the increased water rates effective in October, 1962, but provided that the sewer rate increase should not be applicable until the completion of a contemplated new municipal sanitary sewer system.

The ordinance generally declares that the city, through its board of council, has determined "that the promotion and preservation of the public health, safety and general welfare of said City and of all its citizens and inhabitants require the construction and installation of a new municipal sanitary sewer system, including a treatment plant, outfall lines, lift stations and appurtenant facilities * * *." The ordinance further recites that Mt. Vernon is in the process of planning to finance the construction and installation of the new municipal sanitary sewer system. It is indicated by the ordinance that a revenue bond issue in the sum of approximately $380,000 is contemplated, and that a loan agreement with the Housing and Home Finance Agency of the United States Government has been obtained. The ordinance also declares that it is desired by the city that additional revenues be provided from the existing municipally owned water system in order to enable the city to provide certain needed extensions and improvements to the system.

The intention of the city to combine the ownership, operation and maintenance of the present water system and the proposed sanitary sewer system is proclaimed by the terms of the ordinance in question. The ordinance declares that all such activity shall be done as prescribed in KRS, Ch. 58.

Appellees attacked the ordinance in this class action. CR 23.01. Some of the appellees reside within the limits of Mt. Vernon and others live nearby, and all are customers of the city water system. The complaint avers that for 27 years Mt. Vernon has operated its water system on rates less than those proposed in the attacked ordinance. It is alleged that the lower rates have been adequate for the efficient maintenance and operation of the water system and retirement of bonded indebtedness previously incurred incident thereto.

The appellees assert that the proposed rates are unreasonable and exorbitant. In their complaint it is said by appellees that the proposed rates will produce revenue at least 75% in excess of revenue needed for efficient operation and maintenance of the water system. The trial court made a finding of fact in which he concluded that the new water rate would increase the actual water charges by 65%.

The principal basis upon which appellees attack the ordinance, and the apparent basis of the trial court's decision, is that the city has not adequately adopted specific plans for a sewer project. Appellees point out that the new water rates are in contemplation of producing revenue to finance a sewer system, when, in fact, the city has not irrevocably committed itself legally to provide such a sewer system.

The additional argument is urged that approximately one-third of the water users

of Mt. Vernon reside outside the corporate limits of the town and will not be served by a sewer system. Although it is conceded that such individuals will not pay any sewer charge, it is claimed that they will substantially subsidize the sewer system by reason of the increase in their water bills.

■ We are unable to agree with the decision of the court below; neither can we accept the arguments and reasons advanced by appellees. That a municipality in Kentucky may own and operate a water system is not debated, but it is recognized by the parties to this action. It is likewise established that a Kentucky city may operate a sewer system and that the sewer operation may be merged with the operation of the water system. City of Hazard v. Salyers, 311 Ky. 667, 224 S.W.2d 420.

The evidence reflects that the city needs certain improvements to the existing water facilities. In the course of his findings of fact and conclusions of law the trial court adverted to the evidence concerning these needs by commenting, "Under the evidence the court cannot say that the new apparatus recommended by Smith is necessary to operation of the water plant." The trial court reasoned that since the challenged ordinance did not make reference to these suggested improvements, the city had "waived their necessity."

The trial judge determined what he deemed the fair market value of the water system and then applied a 4% factor to that value as representative of the fair return due to the city from the water company operations. It is our opinion that this was not an appropriate approach to the determination of the reasonableness of the rates in this case, particularly in view of the fact that the city showed the necessity for making needed improvements to the water system which could not be financed on the old rate schedule.

■ We start from the premise that the municipality charged with the duty of operating and maintaining the public service is cloaked with the necessary flexibility of discretion required to fulfill its functions. In the operation of a water plant a municipal corporation is not under the jurisdiction of the Public Service Commission. KRS 278.010(3); McClellan v. Louisville Water Company, Ky., 351 S.W.2d 197. It may not be doubted, however, that activities of such municipalities in this area may be reviewed by the courts to test whether such actions are clearly, palpably and grossly unreasonable. McQuillin, Municipal Corporations, Vol. 12, 3rd Ed., § 34.160.

The appellant contends that the water rates as fixed by the ordinance enjoy the *prima facie* presumption of reasonableness. 43 Am.Jur., Public Utilities and Services, § 186; Shirk v. Lancaster, 313 Pa. 158, 169 A. 557, 90 A.L.R. 688. Appellees, without conceding the point, contend they have carried the burden of establishing the rates to be unreasonable. We do not agree.

It is shown that the water rate will be as follows:

"$3.30 base, Minimum charge for 2,000 gallons or less.
$ .90 for next 8,000 gallons, $ .90 per 1,000 gallons.
$ .70 per 1,000 gallons for next 90,000 gallons.
All over 100,000 $ .50 per 1,000 gallons."

The former rates were:

| "RATE | GALLONS |
| --- | --- |
| $2.00 base | 2,000 and under |
| $ .75 per thousand | next 8,000 gallons |
| $ .50 "      " | All over 10,000 gallons" |

■ Other applicable rates for commercial users are provided in both the old and new rate schedules. It appears of record that the water system was built about 1937, and that the rates have not changed since that time. The city has been able to provide palatable water in sufficient quantity;

the revenues have been enough to reduce the indebtedness and reflect a small annual profit. The trial court concluded as fact that the old rates produce approximately $22,000 gross income annually, and that an annual operating expense of $13,000 would be incurred, thus leaving an annual excess of $9,000. It appears these figures do not reflect any reserve for depreciation, and it is plain that the improvements reasonably appearing necessary to the water system may not be provided by means of the old rates. We consider it fundamental that prudent management contemplates contingencies and conserves assets needed for normal growth, maintenance and improvements.

There is no showing that the new rates are out of harmony with rates charged in similar communities in Kentucky. Neither is it demonstrated that the new rates will inordinately burden users of water. In short, apart from appellees' expressed desires to continue receiving water at the lower rate, there is no showing that the new rates are confiscatory, unduly burdensome, discriminatory, economically unsound, or unreasonable. Whether the trial court or this court would have decided to adopt the new rates is not the question. That discretion is properly vested in the city authorities as a legislative function; our role is to examine the city's activity as to whether it has so far abused its discretion as to make its actions invalid. Hatch v. Fiscal Court of Fayette County, Ky., 242 S.W.2d 1018; Pritchett v. Marshall, Ky., 375 S.W.2d 253.

Neither do we deem it dispositive of this case to suggest, as do the appellees, that the city might not actually construct the sewer system. Rather, we indulge the assumption that the city will implement its expressed intent to provide a sewer system. When and if such failure to go forward on the part of the city becomes a reality will be the time to determine the reasonableness of the water rates in light of conditions which might then prevail.

The judgment is reversed with directions to enter judgment sustaining the validity of the ordinance.

MOREMEN and MONTGOMERY, JJ., dissenting.