**George EMBRY et al. (and 6 other consolidated cases), Appellants,**

v.

**CITY OF CANEYVILLE, Appellee.**

Court of Appeals of Kentucky.

Dec. 17, 1965.

E. F. Martin, Jr., Martin & Martin, Hartford, for appellants.

Paul M. Lewis, Hatcher & Lewis, Elizabethtown, Kenneth Goff, Leitchfield, for appellee.

STEWART, Judge.

These consolidated condemnation proceedings against seven property owners seek to acquire approximately 238 acres of land to provide the City of Caneyville with a water reservoir and a recreational area. The proceedings were begun in the Grayson County Court, pursuant to an enabling ordinance. The county court entered an order on August 1, 1964, appointing commissioners, who on the same day filed their reports as to each parcel taken. On August 24, 1964, it was adjudged the City of Caneyville had the right to condemn the land of the seven property owners upon payment of the commissioners' awards.

Appeals were taken to circuit court by the City of Caneyville and the seven landowners. The circuit court declared the city had the right to condemn the property sought by it. The actions were then continued on the docket for jury trials "on the assessment of damages alone." This order was finalized by compliance with the requisites of CR 54.02. On the appeal to this Court the seven cases are consolidated since the questions raised are common to all.

Appellants' first contention is that the City of Caneyville is not a duly incorporated municipality of the sixth class; therefore, it does not possess the legal right

to condemn their lands. To refute this assertion appellee has filed as an addendum to its brief a copy of Chapter 950 of the 1880 Acts of the General Assembly of Kentucky, entitled "An Act to charter the town of Caneyville, Grayson County." This bill was enacted by the General Assembly on April 9, 1880; it was ordered to take effect from its passage; and the Act has never been repealed. " * * * Generally, the courts regard an act which incorporates a municipal corporation as a public act, whether declared to be so or not, and will take judicial notice of such act without proof. * * *" See 20 Am.Jur., Evidence, sec. 36, p. 60. Under KRS 422.010 (1) all courts in Kentucky shall take judicial notice of all acts and resolutions of the General Assembly. See also 81.010(6) which assigns to Caneyville sixth class status.

■ Appellants' second contention is that in Kentucky a municipality of the sixth class is not empowered to condemn land outside its city limits for the purpose of constructing a municipal water reservoir thereon. Appellee claims that under KRS 96.350(1) and KRS 106.010 a sixth-class city may build a reservoir on land it purchases beyond its boundaries.

It should be pointed out that under the first statutory provision, KRS 96.350(1), a sixth-class city may "purchase, establish, erect, maintain and operate waterworks," but there is no authority for a sixth-class city to *condemn* land. The power of condemnation is specifically given, however, by KRS 106.010, which reads:

"Any water district * * * or any city of the second, third, fourth, fifth or sixth class may, by purchase or by condemnation, acquire, establish, erect, maintain and operate waterworks, together with extensions and necessary appurtenances thereto, and including both real or personal property *within or without the corporate limits of the said water district or city,* for the purpose of supplying the water district or

the city and its inhabitants thereof with water." (Emphasis added.)

KRS 96.350(1) authorizes the acquisition and operation of a waterworks but nowhere does this subsection expressly employ the words "water reservoir." As KRS 106.010 is also phrased in terms of a waterworks project, the question that may be raised is whether "waterworks," as used in this statute, encompasses the establishment of a "water reservoir." Since this statute authorizes a sixth-class city to "acquire (by purchase or condemnation), establish, erect, maintain and operate waterworks, together with extensions and necessary appurtenances thereto," it would seem to be, and we hold it is, sufficiently broad in its meaning to embrace a water reservoir.

■ Appellants' third contention is that cities of the sixth class do not possess the right to condemn land outside the city limits for recreational use. Appellee maintains that KRS 97.010(1) plainly enables it to establish this type of facility either inside or outside its city limits. This subsection reads:

"The acquisition, development, maintenance and operation of parks, playgrounds and recreation centers is a proper municipal purpose for all *cities* and counties. The legislative body of any city or the fiscal court of any county may dedicate for use as parks, playgrounds and recreation centers any lands or buildings owned or leased by the city or county and not devoted to an inconsistent public use and may acquire real property for such purpose by purchases, lease, condemnation or otherwise, at any place reasonably accessible to the inhabitants of the city or county and either *within or without the boundaries of the city* or the county." (Emphasis added.)

Appellants admit this statutory provision purports to confer upon "all cities" the right of condemnation for the purpose of providing parks, playgrounds, and recrea-

tion centers, "either within or without the boundaries of the city." Notwithstanding the bestowal of such a broad power by the phraseology of KRS 97.010(1), appellants assert that because KRS 97.257 and KRS 97.540 expressly give this power only to first-and third-class cities, a specific grant of like power to sixth-class cities was withheld by the Legislature. If this Court were to uphold appellants' view it would render KRS 97.010(1) completely inapplicable to a sixth-class city. We gather no such intent from the language of this statutory provision. We agree with appellee's reasoning on this point, namely, that when the Legislature gave first- and third-class cities a special right to condemn land for recreational use it did not intend to leave KRS 97.010(1) completely ineffective and meaningless as regards all other classes of cities.

■ Appellants' fourth and final contention is that appellee has failed to show any real necessity for condemning their land. This argument is premised on the erroneous conclusion that appellee had the burden of proof and did not sustain it. It has consistently been held by this Court that "[m]unicipal corporations are agencies of the state and when they declare through their constituted authorities that the taking of private property is requisite for an authorized public use, they exercise a public function and it is assumed that, as public agencies, they have carried out with wisdom and discretion the power lodged in them by the Legislature. The burden of showing the contrary is upon any person who objects to the proceeding." See McGee v. City of Williamstown, Ky., 308 S.W. 2d 795, 797; Jefferson County v. Clausen, 297 Ky. 414, 180 S.W.2d 297.

The total acreage involved in this project undertaken by appellee is 201.51 acres taken in fee simple and 36.65 acres taken by easements. Appellants complain that the amount of this taking is not only unnecessary and unreasonable, but also that other

land is available which is much closer to the city. In the McGee case, cited above, this Court held that the City of Williamstown could consider reasonable future needs in condemning land on which to construct a supplemental water reservoir. On this point the opinion said at 308 S.W.2d page 796:

"It is a general principle of law that the Legislature cannot authorize the taking of property by eminent domain in excess of the particular public need involved. However, the limitation upon the amount of property to be condemned for an acknowledged public improvement may not be based solely upon present conditions and requirements but a municipality may also procure land in contemplation of such reasonable necessity as may arise in the future. * * *"

The report of the consulting engineers reveals that this community lies in an agriculture section consisting of approximately 200 residents, a school, five churches, one pickle factory, one hotel and twelve small businesses. The report also emphasizes that over the next thirty years the number of users of the water system will more than likely double.

The necessity for the water system has been admitted. The city has no usable water and it was shown it is required to truck it in and dump it in cisterns. It would seem that a legislative body charged with carrying out its responsibility to the City of Caneyville would be derelict in its duty should it not attempt to establish a water system. The city has no playground for its children, nor a recreational area for its adults. Certainly the city's utilization of the land around the reservoir for park purposes is a needy project that can be accomplished at no great expense. We believe the city's action in this respect is a laudable undertaking.

Wherefore, the judgment is affirmed.