**Earl B. BAKER, Appellant,**

v.

**CITY OF RICHMOND,
Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 16, 1986.

John F. Lackey, Richmond, for appellant.

Robert C. Moody, Thomas J. Smith, (amicus curiae) Richmond, Franklin P. Hays, Louisville, Alison L. Milby, Richmond, for appellee.

Before HAYES, C.J., HOWERTON and McDONALD, JJ.

McDONALD, Judge:

The appellant, Earl B. Baker, was serving on Richmond, Kentucky's Board of Commissioners when he brought this suit seeking a declaration of rights on whether the city could condemn property outside the city limits for a water line and issue revenue bonds pursuant to KRS Chapter 58 without holding a public referendum on the issue.

The city proposed to construct, through its utility board, a water line from the city limits across unincorporated land for a distance of about nine miles to the Kentucky River. The appellant secured sufficient signatures on a petition for referendum on whether the city should build the new line or repair its existing reservoir which is inside the city limits. The city refused to authorize the referendum on advice of the city attorney. Appellant then sought a declaration of rights on both issues in the Madison Circuit Court. The city moved for judgment on the pleadings which was granted, and appellant's motion to vacate or amend and make additional findings of fact pursuant to CR 52.02 and 59.05 was denied, at which time this appeal was made on the following issues:

I. A public referendum was both authorized and required before issuing the bonds.

■ Appellant's first position is that KRS 96.540, which requires a majority voter assent prior to selling, conveying, leasing or encumbering the system or the income thereof, requires approval for this project since KRS 96.540 was passed after

KRS 58.010 et seq. Appellee responds that since KRS 58.040, under which the city would issue the bonds, was passed after the original KRS 96.540 and allows the encumbrance of such revenues, any prohibition in KRS 96.540 is superseded, and that when KRS 96.540 was re-enacted, it was only to make a change in the amount of votes needed to carry a referendum, not to require a vote on Chapter 58 bonds. *Brown v. City of Harrodsburg*, Ky., 252 S.W.2d 44 (1952), supports this position as KRS 96.540 had been construed prior to the adoption of Chapter 58, and when the legislature substantially re-enacted it subsequent to Chapter 58, the prior construction was adopted. Hence, KRS 96.540 vote requirements do not apply to Chapter 58 bonds.

■ The courts have also found that bonds meeting KRS 58.010–58.140 requirements do not violate the Section 157 and 158 constitutional prohibitions on indebtedness. This is because such bonds are paid solely from revenues of the designated system and do not encumber the city itself. *City of Bowling Green v. Kirby*, 220 Ky. 839, 295 S.W. 1004 (1927); *City of Hazard v. Salyers*, 311 Ky. 667, 224 S.W.2d 420 (1949). The bonds in question are to be paid solely from revenues and a special fund is to be set up. The appellant may be relying upon language in the ordinance which indicates the obligation is binding on the City of Richmond as a first lien and pledge, but a simple reading of the ordinance reveals that the lien and pledge are enforceable against the revenues only, not the city itself.

■ Appellant also maintains that KRS 83A.120 authorizes a public referendum on issuing revenue bonds for city water improvements because the statute creates a public policy favoring referenda which should be allowed where not otherwise prohibited. The city's position is that the referendum was not authorized as there was nothing in the nature of a public question, such as a tax to be levied, to mandate a vote. KRS 83A.120 procedures would not come into play without specific

authority as the language "may" indicates the statute is not mandatory. As the water system revenues are obligated to repay the bonds, we find no levy of tax upon the public-at-large which would mandate the necessary authorization for KRS 83A.120.

■ II. The City of Richmond has no general power to condemn land outside its corporate limits for the waterline.

Appellant maintains that Chapter 58 applies to bonds for such projects as shopping centers, bowling alleys and banks, and does not contemplate territorial overlaps so that a general power of condemnation is not applicable, limiting the city to Chapter 58 condemnation powers. The appellant refers to a Legislative Research Commission compilation of all statutory authority for revenue bonds, noting that each contains an explicit grant of condemnation power but that KRS 58.020 has no such power. Appellees point out that the greater part of revenue bonds issued pursuant to Chapter 58 have gone to finance city utilities, and rely on the enabling legislation of KRS 106.010 and a reading together of KRS 58.020 and KRS 58.140 to find power to condemn if the city cannot acquire necessary land within or without the city limits. Such reading was used in *Embry v. City of Caneyville*, Ky., 397 S.W.2d 141 (1965), where the bonds were not issued pursuant to the enabling statute, as is the case here, to reach a correct result. We think the appellee has likewise reached a correct result in this case.

■ Appellant's final argument of whether the home rule statute, KRS 82.082, overrules all prior legislative grants of extraterritorial condemnation powers is a question of first impression. Appellant argues that it does because the legislative intent in passage of KRS 82.082 was to circumscribe the prior grants of power as evidenced by its repeal of three statutes which had given cities such grants of power: KRS 94.170, condemnation of property for sewage system under alternative method; KRS 85.120, general powers of common council; and KRS 94.680, condemnation of property for public purposes in cities of second class. This argument lacks conviction as at least the last two would have been redundant under home rule and should have been repealed.

Appellant then maintains that KRS 82.082(2) shows a preference for Chapter 96 over Chapter 58 because the former is specifically mentioned in KRS 82.082(2); therefore, any grant of power to condemn extraterritorially must rest on a comprehensive scheme of legislation such as Chapter 96, not specific pre-KRS 82.082 grants such as KRS 106.010.

Appellee correctly responds that KRS 82.082 has no effect whatsoever on such condemnation powers granted elsewhere in the statutes because the home rule statute deals with powers which a city possesses within its boundaries, a position accepted by the trial court which said, "This statute works to merge all of the city's territorial powers into one broad grant; but it does not work to repeal any specific extraterritorial powers that the city previously had." *See* J. Morris, *Municipal Law*, 70 Ky.L.J. 287, 293–297 (1982).

If the statute is to be construed as appellant wishes, that home rule confines a city within its boundaries, allowing all powers within except when specifically denied, and that KRS 82.082 circumscribes extraterritorial powers existing when home rule was adopted, cities must once again go to the legislature to request specific extraterritorial powers not within a broad legislative scheme. This was exactly the kind of recurring application which the legislature sought to resolve as to territorial powers; it would be inconsistent to find that the legislature intended to be put back into the position of having to grant permission, rather than denial under the limitation of KRS 82.082, to reinstitute powers granted prior to home rule.

We hold that home rule, as granted by KRS 82.082, does not limit extraterritorial powers existing prior to its adoption. We adopt the reasoning of the trial court. Therefore, the judgment of the Madison Circuit Court is affirmed.

All concur.